[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
This is an action for termination of father's parental rights initiated by mother by a petition filed in the Guilford Probate Court on June 12, 1995.
On father's motion and pursuant to General Statutes, §45a-715 (g), this matter was transferred to the Superior Court for Juvenile Matters in April, 1996. CT Page 696-A
A contested hearing began on August 6, 1996. All parties appeared and were represented by counsel. On August 6th petitioner moved to amend her petition to allege an additional statutory ground for termination, "no on-going parent-child relationship". The motion was granted and the petition was amended accordingly. The minor child moved to join in the petition and this motion was granted.
The hearing continued on August 20, September 13, September 27, October 31, November 1, and all parties rested on November 19, 1996. Trial memoranda were filed on or before December 13, 1996 and the hearing was closed on that date.
 II
The petition as filed in probate court alleged two statutory grounds for termination of parental rights, pursuant to General Statutes, § 45a-717 (g), namely: "(A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child"; and "(B) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for the child's physical, educational, moral or emotional CT Page 696-B well-being."
By amendment, petitioner added ground (C): "no ongoing parent-child relationship" which is defined as "the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the child." Petitioners failed to brief ground (B) and that claim is deemed abandoned. The surviving grounds, then, are "abandonment" and "no parent-child relationship".
 III
The child is Anthony E. ("TJ"); the respondent father is Anthony L.; the mother is Susan M. The parents were married on December 7, 1979. Their son, TJ, was born on April 13, 1980. The parents were divorced on December 6, 1983. Physical and legal custody of TJ was awarded to his mother with reasonable visitation to father. In 1986 mother married Tom M.
In November, 1989 and in October, 1991, respondent filed, variously, motions for contempt and to reopen and modify judgment to ensure or expand his rights of visitation. On both occasions CT Page 696-C the issue of visitation was mediated and agreement was reached on specifics of visitation. The 1991 agreement expanded father's visitation, subject to TJ's interests and comfort level. In August, 1991 mother applied in probate court to change TJ's last name to that of his stepfather, Tom M. Respondent father opposed the application and it was denied.
 IV
The petition alleges that TJ has been abandoned by his father in the sense that father has failed to maintain a reasonable degree of interest, concern or responsibility at to TJ's welfare. Abandonment focuses on the parent's conduct, In re Michael M.,29 Conn. App. 112, 121. The statute "does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child," In re Michael M., supra, at 121. It is not the court's function to attempt to divine what was in father's heart over these many years but to assess the quality, frequency and duration of his actions in maintaining a reasonable degree of interest, concern or responsibility as to TJ's welfare. "Maintain" implies a continuing, reasonable degree of concern, Inre Migdalia M., 6 Conn. App. 194, 210.
Based on the evidence presented, the court finds that respondent father, Anthony L., made inconsistent and sporadic CT Page 696-D attempts to show interest, concern or responsibility for the welfare of TJ between 1984 and 1992. The record demonstrates a pattern of conduct wherein father periodically went to court to assert his legal rights and then subsequently exercised these rights in an inconsistent and sporadic manner. This conduct resulted in repeated disappointment and frustration to TJ and contributed greatly to the withering of whatever positive feelings the child might have entertained toward respondent. From April, 1992 to the filing of this petition father had no visits with TJ. The already sporadic efforts by father diminished almost to the vanishing point.
Father's counsel cites numerous reasons for father's "low level of participation in TJ's life", including father's age, education level, health, losses of family members, and strokes, resulting in father's diminished ability to communicate. Undoubtedly father has experienced many difficulties in his life. These difficulties may help explain father's failure to maintain a reasonable degree of interest, concern or responsibility as to TJ's welfare, but such difficulties cannot eradicate such failure. The court finds that "despite the respondent's personal problems" he has "objectively failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare" of TJ, In re Lori Beth D., 21 Conn. App. 126, 134, 135. CT Page 696-E
The court concludes that petitioners have established by clear and convincing evidence that the petitioner, TJ, has been abandoned by respondent father, Anthony L., in the sense that respondent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of his child over an extended period of time.
 V
Petitioners allege a second statutory ground for termination — no on-going parent-child relationship. The statute defines an on-going parent-child relationship as one which "ordinarily develops as a result of a parent having met on a continuing, day-to-day basis, the physical, emotional, moral and educational needs of the child." Connecticut's Supreme Court has determined that this definition is "inherently ambiguous when applied to noncustodial parents who must maintain their relationship through visitation," In re Jessica M., 217 Conn. 459, at 467, 468. Our Supreme Court has adopted the Appellate Court's conclusion that "the statute requires that the child have some `present memories or feelings for the natural parent' that are positive in nature,"In re Jessica M., supra, at 469, and itself concludes, "[I]t is nevertheless reasonable to construe this statutory ground for termination to require a finding that no positive emotional CT Page 696-F aspects of the relationship survive," In re Jessica M., supra, at 470.
In applying these requirements to the facts of this case, the court has had the testimony of the child in question to consider. TJ, a co-petitioner, in his seventeenth year, was asked, with regard to his relationship with his natural father, "Where would you place him?" TJ answered, "At the bottom. I don't really have a relationship with him. . . ." "With the exception of like legally he's my father, emotionally there is no relationship." (Transcript, August 6, 1996, p. 120.) TJ testified to the repeated disappointments caused him by respondent's failure to keep scheduled visits or to call to cancel visits already scheduled and missed. TJ described his stubborn efforts from his early years to take Tom M.'s last name as his own. TJ testified that visitation with respondent was not something he wanted to do in the "last couple of years". (Transcript, supra, at p. 130.)
Respondent cites TJ's recollection of watching football on TV with his father and of two fishing trips as specific positive memories and feelings toward his father. Having had the opportunity to observe TJ's demeanor when testifying as to these events and in the context of his complete testimony, the court cannot find that these memories evidence any present feelings toward or recollections of his father which are positive in CT Page 696-G nature. The court finds that no positive emotional aspects of the relationship between TJ and respondent survive.
The court finds that the petitioners have established by clear and convincing evidence that there is no on-going parent-child relationship between TJ and respondent.
TJ has testified that he wishes to be freed for adoption. He has stated that should the petition be denied he would not visit with respondent. In the circumstances, the court finds by clear and convincing evidence that to allow further time to establish or reestablish a parent-child relationship would be futile and detrimental to the child.
 VI
The statutory grounds for termination of respondent's parental rights having been established, the court, by clear and convincing evidence, makes the following findings pursuant to the requirements of General Statutes, § 45a-717 (i):
 (1) There were no services offered or provided by an agency to facilitate the reunion of the child with his father. "Care, custody and education" of the child were committed to his mother in the divorce decree and there was no evidence offered that the CT Page 696-H parties ever contemplated father assuming the role of custodial parent. Father sought, in 1989 and 1991, to assert or enhance his visitation rights and the family relations division mediated agreements on visitation.
 (2) The court decree dissolving the marriage between Anthony L. and Susan M. ordered reasonable visitation for father. Despite father's assertions to the contrary, the court finds by clear and convincing evidence a prolonged and good faith effort by mother to comply with the order of reasonable visitation.
 (3) TJ has a warm parent-child relationship with his mother, Susan M. TJ has a warm relationship with his stepfather, Tom M. TJ views Tom M. as his father and hopes to be adopted by Tom M. and to assume Tom's family name. TJ has no positive feelings or emotional ties toward respondent, Anthony L.
(4) TJ is approximately 16 years, 10 months in age.
 (5) The efforts father has made to adjust his circumstances, conduct or conditions to make it in the child's best interest to return child to father's home in the foreseeable future: strictly speaking this consideration is inapplicable in the instant case in that no such return has ever been contemplated by the parties. Construing this consideration to encompass any effort father made CT Page 696-I to maintain or enhance his relationship with his child, the court finds father made sporadic and inconsistent efforts in the period 1984 to 1991, and severely diminished efforts from April 1992 to 1996.
 (6) The court finds that respondent, Anthony L., has not been prevented from maintaining a meaningful relationship with TJ by the unreasonable act or conduct of Susan M. or any other person, nor by Anthony L.'s economic circumstances.
 VII
Having established the statutory grounds for termination and completed the considerations mandated by statute, the court must determine whether termination of respondent's parental rights is in the child's best interest.
TJ has testified as to his stepfather, Tom M.: "He's my Dad." (Transcript, August 6, 1996, p. 119.) TJ wishes to be adopted by Tom M. Tom M. testified he wished to adopt TJ. The court finds by clear and convincing evidence that it is in the best interest of TJ that his natural father's rights be terminated and that TJ be freed for adoption.
Accordingly, the parental rights of Anthony L. in and to his CT Page 696-J son, Anthony E. ("TJ"), are hereby terminated.
 VIII
If respondent wishes to appeal this decision, trial counsel for the respondent is appointed counsel for perfecting an appeal. Should counsel decline to do so, she is to notify the clerk of this court promptly and a second attorney will be appointed to review the file. If the second attorney declines to perfect an appeal, said attorney is to notify the clerk and the respondent promptly. Respondent then may seek counsel to perfect an appeal. Such counsel may be appointed by the court for that purpose.
John W. Downey, Judge